1

2                          IN THE UNITED STATES DISTRICT COURT

3                      FOR THE EASTERN DISTRICT OF CALIFORNIA

4

5

6   TERRY AUSTIN POOL,

7          Plaintiff,                         CV F 05 00639 REC WMW   P

8          vs.                                FINDINGS AND RECOMMENDATION
                                              RE MOTION TO DISMISS (DOC 11 )
9

10

11  ROBERT HARO, et al.,

        Defendants.
12

13

14

15          Plaintiff is a federal prisoner proceeding pro se in a civil rights action.  Pending

16  before the court is defendants' motion to dismiss for plaintiff's failure to exhaust his available

17  administrative remedies prior to filing suit.  Plaintiff has opposed the motion.

18          This action proceeds on the second amended complaint.   Plaintiff, currently in

19  the custody of the U.S. Bureau of Prisons at the U.S. Penitentiary at Victorville, brings this

20  action against defendants for alleged constitutional violations that occurred while plaintiff was

21  housed at various federal prisons.   The second amended complaint, set forth in narrative form,

22  fails to identify specific causes of action.   In their motion, defendants respond to seven separate

23  "Claims for Relief" set forth by plaintiff.   Plaintiff does not challenge defendants'

24  characterization of his claims.

            First Claim
25
            Plaintiff claims that defendants O'Brien, Schultz, Moorehead and Cole (at the
26

1

1   time employed at USP Atwater) violated his rights under the Privacy Act and the Fifth

2   Amendment by reclassifying him as a member of the Aryan Brotherhood.

3            Second Claim

4            Plaintiff claims defendant Lynn violated his Constitutional rights under the First,

5   Fourth, Fifth and Eighth Amendments by subjecting him to "urinalysis procedures as a

6   'Disruptive Group Member'" while at USP Lompoc.  Plaintiff also appears to claim defendant

7   Lorance violated his rights by disciplining him pursuant to such refusal.

8            Third Claim

9            Plaintiff claims defendant Lorance violated his Fifth Amendment rights by

10  refusing to allow him to present witness testimony   or present Bureau documentation from his

11  central file in defense of his disciplinary hearing at USP Atwater.

12           Fourth Claim

13           Plaintiff claims defendant Haro violated his Fifth Amendment rights by "failing to

14  reverse or otherwise stop" the alleged actions of defendants Lynn and Herrera at USP Lompoc.

15  Plaintiff charges Lynn with publicizing confidential information about plaintiff in a Special

16  Housing Unit.  Plaintiff charges Herrera with denying plaintiff's grievances regarding this

17  action.

18           Fifth Claim

19           Plaintiff claims defendants Lynn and Herrera (while plaintiff was housed at USP

20  Lompoc) violated various Constitutional rights by designating plaintiff as an "associate" or

21  "suspect" member of the Aryan Brotherhood.

22           Sixth Claim

23            Plaintiff claims defendant Haro (the Regional Director) violated various

24  Constitutional rights by failing to prevent defendants Lynn and  Herrera from conducting urine

25  tests at USP Lompoc.

26

1        Seventh Claim

2        Plaintiff claims defendants Moorehead and Cole violated various rights under the

3   Constitution and Privacy Act by "disclosing confidential and privileged 'classification'

4   information [about him] to other inmates.'"

5        Exhaustion

6        Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be

7   brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

8   a prisoner confined in any jail, prison, or other correctional facility until such administrative

9   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The section 1997e(a)

10  exhaustion requirement applies to all prisoner suits relating to prison life, including those filed

11  by federal prisoners suing under Bivens. Porter v. Nussle, 435 U.S. 516, 532 (2002) (federal

12  prisoners suing under *Bivens* must first exhaust inmate grievance procedures; administrative

13  exhaustion is prerequisite even if administrative remedies are not plain, speedy, and effective,

14  and relief inmate seeks is not available).  "All 'available' remedies must now be exhausted; those

15  remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"

16  Porter, 534 U.S. at 524 (citing to Booth v. Churner, 532 U.S. 731, 739 n.5 (2001)).  Prisoners

17  must complete the prison's administrative process, regardless of the relief sought by the prisoner

18  and regardless of the relief offered by the process, as long as the administrative process can

19  provide some sort of relief on the complaint stated.  Booth, 532 U.S. at 741.

20        The Bureau of Prisons has established an administrative remedy procedure governing

21  prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq.

22        First, an inmate must attempt to resolve the issue informally by presenting it to staff

23  before submitting a Request for Administrative Remedy.  28 C.F.R. § 542.13(a).  If dissatisfied

24  with the response, the prisoner may proceed with the formal filing of an Administrative Remedy

25  Request, Form BP-9.  28 C.F.R. § 542.14(a).  Upon denial by the institution, the prisoner may

26

1    appeal the decision by filing a complaint with the Regional Director of the Bureau of Prisons.

2    Form BP-10.  28 C.F.R. § 542.15(a).   The Regional Director's decision may be appealed to the

3    General Counsel in Washington, D.C.  Form BP-11.  Id.   Appeal to the General Counsel is the

4    final step in the administrative remedy process. Id.

5                    First Claim

6                    Plaintiff's claim is that he was improperly classified as a member of the Aryan

7    Brotherhood by defendants O'Brien, Schultz, Moorehead and Cole.   Plaintiff's grievance of this

8    issue is administrative claim no. 282610. (Declaration of Vickie Petricka, Supervisory Paralegal

9    at the BOP's Western Regional Office).  Exhibit A to the Petricka Declaration is plaintiff's

10   grievance, framed as a request to be declassified from his Central Inmate Monitoring (CIM)

11   Disruptive Group Aryan Brotherhood assignment.   The response from Administrator of

12   National Inmate Appeals indicates that "The Warden reviewed your CIM status and determined

13   insufficient documentation exists to support your CIM classification of Disruptive Group Aryan

14   Brotherhood."

15                   Defendants argue that the grievance makes no mention of defendants (former

16   Warden) O'Brien or Warden Schultz.   Defendants further argue that the claim is moot, as the

17   classification has been removed.

18                   In general, prisoners have no liberty interest in their classification status.  Moody

19   v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996);

20   Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987).   Prisoners are entitled to the

21   protections of procedural due process only with respect to "deprivations of interests

22   encompassed by the Fourteenth Amendment's protection of liberty and property." Neal v.

23   Shimoda, 131 F.3d 818, 827 (9th Cir. 1997).   If the conditions or degree of confinement to

24   which plaintiff is subjected are within the sentence imposed upon him and do not otherwise

25   violate the Constitution, then no liberty interest arising from the Due Process Clause is

26

1   implicated.   Liberty interests are limited to freedom from restraint which, while not exceeding

2   the sentence in such an unexpected manner as to give rise to protection by the Due Process

3   Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in

4   relation to the ordinary incidents of prison life.

5              Here, there are no such allegations.   The second amended complaint alleges, at

6   most, that plaintiff was classified as an Aryan Brotherhood Disruptive Group member.   By

7   pursuing the administrative grievance process, plaintiff was able to have the classification

8   changed.   Such a temporary classification, of itself, does not create a protected liberty interest.

9   Plaintiff does allege that as a result, he "would be denied educational, vocational, employment

10  programs or otherwise opportunities to habilitate and/or rehabilitate as afforded inmates not

11  classified as AB or disruptive group members."  (SAC ¶ 24).   Prisoners have no constitutional

12  right to a prison job or educational opportunties.  Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.

13  1985); Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir. 1985); Hoptowit v.

14  Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982).   Prisoners have no protected constitutional right to

15  any work assignment.  Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986), cert.

16  denied 481 U.S. 1069 (1987).

17              Plaintiff also contends that such erroneous classification resulted in being housed

18  at various maximum security penitentiaries.   Prisoners have no liberty interest in being housed at

19  a particular institution.  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano,

20  427 U.S. 215, 225-27 (1976); United States v. Brown, 59 F.3d 102, 105 (9th Cir. 1991)(per

21  curiam); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991)(per curiam); Coakley v. Murphy,

22  884 F.2d 1218, 1221 (9th Cir. 1989).   Plaintiff does contend that he was subjected to potential

23  harm, but alleges no facts indicating that he suffered any actual injury.

24      There are no allegations that plaintiff was actually subjected to atypical and significant

25  conditions of confinement in relation to the ordinary incidents of prison life as a result of his

26

5

1   classification.   This claim therefore fails to state a claim for relief.

2                  Second Claim

3                  Plaintiff's second claim relates to discipline for refusing to take a urine test at

4   USP Atwater.   Exhibit B to the Petricka declaration are copies of plaintiff's administrative

5   grievances regarding his appeal of the Disciplinary Hearing Officer's Report for refusing to

6   provide a urine sample.   The crux of plaintiff's grievance is that the prison violated policy by

7   directing plaintiff, a classified Disruptive Group member, to take a urine test.   Plaintiff contends

8   that the policy directs that only confirmed Disruptive Group members are subject to designated

9   urine tests.

10                  Prison inmates only retain privacy rights not inconsistent with legitimate

11   penological objectives.  Turner v. Safley, 482 U.S. 78, 89 (1987).   Thus, while prisoners have

12   some right to bodily privacy, prisons must be able to meet their "internal security needs".

13   Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988).   The court notes that urinalysis

14   reports have been found to be sufficiently reliable to satisfy the "some evidence" standard for

15   due process (see discussion below).  See Harrison v. Dahm, 911 F.2d 37, 41 (8th Cir. 1990);

16   Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989); Higgs v. Band, 888 F.2d 443, 449 (6th

17   Cir. 1989).   Thus, plaintiff again fails to state a claim.

18                  Third Claim

19                  Plaintiff's third claim relates to his punishment for refusing his urinalysis test.

20   Plaintiff's specific allegation is that defendant Lorance refused to allow him to present witnesses

21   and obtain file documents within his appeal of his punishment for refusing the urine test.

22   Defendants argue that this particular allegation is not contained within the initial filing of any

23   administrative file, and therefore is not viable.

24                  In his opposition, plaintiff refers to defendants' Exhibit B.   Exhibit B includes

25   copies of Administrative Remedies no. 312848 regarding plaintiff's appeal of the amended DHO

26

1   report for refusing to provide a urine sample.  Page 2 is a copy of the Central Office DHO

2   Appeal, which indicates that plaintiff is alleging that the DHO "was aware of the above and

3   deliberately denied me due process by insisting the designation of urine test in question was

4   irrelevant and by refusing to allow evidence and witnesses to the contrary."   Page 3 is a copy of

5   the response from the Administrator of National Inmate Appeals, upholding the decision of the

6   DHO on the ground that "the required disciplinary procedures were substantially followed, the

7   greater weight of the evidence supports the DHO's decision, and an appropriate sanction was

8   imposed."

9               Though it appears that plaintiff did administratively appeal an alleged due process

10  violation, in order to state a claim for a due process violation at a prison disciplinary hearing,

11  plaintiff must allege facts indicating that his disciplinary conviction has been invalidated.  In

12  Edwards v. Balisok, 520 U.S. 641, 644 (1997), the United States Supreme Court applied the

13  doctrine articulated in Heck v. Humphrey, 512 U.S. 477, 487 (1994), to prison disciplinary

14  hearings.  In Heck, the Court held that a state prisoner's claim for damages for unconstitutional

15  conviction or imprisonment is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of

16  plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the prisoner

17  can demonstrate that the conviction or sentence has previously been invalidated.  512 U.S. at

18  487.  In applying the principle to the facts of Balisok, the Court held that a claim challenging the

19  procedures used in a prison disciplinary hearing, even if such a claim seeks money damages and

20  no injunctive relief, is not cognizable under § 1983 if the nature of the inmate's allegations are

21  such that, if proven, would necessarily imply the invalidity of the result of the prison disciplinary

22  hearing.  520 U.S. at 646.  Because such a challenge, if successful, would invalidate the duration

23  of the inmate's confinement, it is properly brought as a habeas corpus petition and not under §

24  1983.  Heck, 512 U.S. at 487; Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

25               Although the specific facts of Balisok involved allegations of deceit and bias on

26

1   the part of a hearing officer, the Court's reasoning applies to any claim which, if proven, would

2   have the effect of invalidating the result of a disciplinary hearing.  Here, plaintiff alleges that he

3   was denied due process.  Specifically, that he was denied the right to call witnesses and seek

4   discovery of charging documents.  Because plaintiff's claim necessarily implies the invalidity of

5   plaintiff's continued confinement as a result of his disciplinary hearing, plaintiff's claim will not

6   accrue until the conviction or sentence has been invalidated.   This claim therefore fails.

7               Fourth Claim

8   _____Plaintiff's fourth claim is an allegation that Regional Director Haro failed to

9   prevent the conduct of defendants Lynn and Herrera at USP Lompoc.   Defendants argue that

10  plaintiff failed to file any grievance related to this conduct.   In his opposition, plaintiff refers to

11  defendants' Exhibit D.  Plaintiff contends that Exhibit D "establishes that plaintiff did in fact file

12  an appeal to the Central Office of the BOP claiming that defendant Haro decision was arbitrary

13  and ignoring plaintiff's claims against defendants Herrera and Lynn in that these two defendants

14  were retaliating against plaintiff in direct response to plaintiff's filing of grievances against

15  defendants Herrera and Lynn. . . ."  (Opposition at p. 5, ¶ 2).

16              Defendants' Exhibit D is, as plaintiff notes, the record of plaintiff's

17  Administrative Grievance no. 336030.   Page 2 of Exhibit D is a copy of the grievance written

18  and signed by plaintiff.  Plaintiff specifies the issue: "The issue is SIS Lt. Lynn initiated 'prior

19  use' testing in retaliation for filing grievance # 330749 against him."   Plaintiff does indicate that

20  "the Regional Director erred in assuming UA test on 5-12-04 was based on my placement on

21  'prior use' list for refusing to provide urine sample in December 2002. That is not an issue

22  here." (original underlined).

23              There is no indication that the grievance indicated that Haro knew of conduct that

24  constituted a civil rights violation, nor any allegations that Haro failed in any obligation to

25  prevent it.  Plaintiff was clear that the issue was Lt. Lynn's conduct in administering a urinalysis

26

1  test.   Plaintiff offers no evidence that this claim was administratively exhausted.   This claim

2  should therefore be dismissed.

3            Fifth Claim

4            Plaintiff's fifth claim is that defendants Lynn and Herrera each violated his Fifth

5  and Eighth Amendment rights by designating him an "associate" or "suspect" member of the

6  Aryan Brotherhood at USP Lompoc.   Defendants submit Exhibit F, administrative claim no.

7  330749.  Defendants note that the administrative grievance  does not include any references to

8  conduct by defendant Herrera.  In opposition, plaintiff refers to the same exhibit, arguing that he

9  "did complain to the Central Office of the BOP about both defendants Lynn and Herrera's

10  actions of then classifying plaintiff as a suspect member of the Aryan Brotherhood in order to

11  continue the harassment plaintiff had been previously subjected to for approximately 20 years."

12  (Opposition at p. 6, ¶ 2).

13            Defendants' Exhibit F includes copies of administrative grievance no. 330749.

14  The issue in that grievance is the allegedly wrongful classification.  As relief, plaintiff sought to

15  have documentation in his central file expunged, and to have Lt. Lynn investigated  for

16  discussing plaintiff's  alleged history and classification with other inmates.   On Page 2 of his

17  grievance (dated May 4, 2004), plaintiff specifically refers to Lt. Lynn's conduct in discussing

18  his history and classification with other inmates.

19            Plaintiff does not, however, make any reference to defendant Herrera.   There are

20  no references to defendant Herrera in the grievance, and no allegations of conduct by defendant

21  Herrera.   Plaintiff contends that the grievance refers to conduct by both defendants.

22  Throughout his grievance, plaintiff is specific about individual conduct.  He does not complaint

23  about classification in general, but about conduct by certain individuals.  Herrera is not named in

24  the grievance.

25            Further, as noted above, plaintiff has no liberty interest , absent some allegation of

26

1    atypical and significant hardship in relation to the ordinary incidents of prison life, in his

2    classification status.  Assuming the factual allegations of the complaint as true, plaintiff has

3    failed to articulate a claim for relief.

4                    Sixth Claim

5                    Plaintiff's sixth claim is a re-articulation of his fourth claim.   He claims that

6    defendant Haro failed to prevent the conduct of Lynn and Herrera.  In this case, he failed to

7    prevent them from testing his urine.  As noted above, plaintiff has no protected interest in being

8    free from urinalysis testing.  There are no allegations that Haro knew of a Constitutional

9    violation and failed to prevent it.  The response to plaintiff's grievance from the National Inmate

10   Appeals Administrator reveals that BOP policy was followed.   The response indicates that

11   plaintiff's refusal to submit a urine sample resulted in monthly testing for 24 months.  The

12   response referred to Program Statement 6060.08, Urine Surveillance and Narcotic Identification.

13   Assuming the facts alleged by plaintiff, plaintiff has no protected interest in being free from

14   urinalysis testing.  Haro can not therefore be liable for failure to prevent unconstitutional

15   conduct.  This claim therefore fails.

16                   Seventh Claim

17                   Plaintiff's seventh claim is that defendants (at Atwater and Lompoc) disclosed

18   confidential classification information about plaintiff to other inmates.  Defendants refer to

19   administrative grievance no. 286658 (against defendants Moorehead and Cole) and

20   administrative grievance no. 330749 (against defendant Lynn).  Defendants argue, and plaintiff

21   concedes that there was no grievance filed at the final level.  Plaintiff failed address the matter

22   with the General Counsel, as required by 28 C.F.R. § 542.15(a).

23                   In his opposition, plaintiff alleges generally that "he never filed a BP-11

24   grievance with the Central Office, it was only a result of prison officials, Milligan and Simmons,

25   acts and omissions to interfere with and frustrate plaintiff's attempts to exhaust his

26

1   administrative remedies." (Opposition at p. 8, ¶ 2).  In his second amended complaint, however,

2   plaintiff indicates that, as to defendant Lynn his efforts to exhaust included the following"

3   "Plaintiff initiated the formal grievance against defendant Lynn on April 5, 2004 which was

4   subsequently denied by defendant Herrera, and later by defendant Haro.  Appeal was then

5   submitted timely to the Central Office and later denied on August 12, 2004."  There is no

6   mention of the grievance number, nor any allegation that he filed a grievance against defendants

7   Moorehead  and Cole.   Nor are there any allegations that support plaintiff's argument in his

8   opposition - there are no allegations that plaintiff attempted to file a grievance and was frustrated

9   by the actions of prison officials Milligan and Simmons.

10          Plaintiff concedes in his opposition that he did not fully exhaust this claim.

11  Defendants have met their burden by coming forward with specific evidence that plaintiff has

12  not fully exhausted this claim.   Plaintiff's generalized argument that he was frustrated in his

13  efforts to do so are not supported by any factual allegations in the second amended complaint.

14  This claim should therefore be dismissed for failure to exhaust.

15          Defendants argue that plaintiff has failed to exhaust his administrative remedies,

16  and this action should therefore be dismissed for his failure to do so.  Defendants further argue

17  that this action is subject to dismissal even though some claims may be exhausted.   The Ninth

18  Circuit recently addressed the issue of "mixed" complaints containing both exhausted and

19  unexhausted claims.  Lira v. Herrera, 427 F.3d 1164 (9th Cir. 2005).   The court framed the

20  question as what the district court should do when confronted with a mixed complaint.  The

21  Ninth Circuit held that the district court should adopt the approach used in the habeas context.

22  "When a district court is faced with a complaint containing claims that are closely related, the

23  court should follow the approach set forth in Rose and its progeny: dismiss the complaint and

24  allow the plaintiff the opportunity to amend his complaint to excise the unexhausted claims.   In

25  following this procedure, we expect that district courts will exercise their usual discretion in

26

1   granting leave to amend such defective complaints." Lira, 427 F.3d at 1176.

2           Here, plaintiff clearly failed to exhaust claims 4 and 7.   As to claims 1,2,3,5 and

3   6, the court finds that plaintiff has failed to state a claim upon which relief can be granted.[1]

4           Accordingly, IT IS HEREBY RECOMMENDED that:

5           1.  Claims 1,2,3,5 and 7 be dismissed for failure to state a claim upon which relief

6   could be granted.

7           2.  Claims 4 and 7 be dismissed without prejudice for failure to exhaust available

8   administrative remedies prior to filing suit.

9           These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B).  Within

11  twenty days after being served with these findings and recommendations, any party may file

12  written objections with the court and serve a copy on all parties.  Such a document should be

13  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

14  objections shall be served and filed within ten days after service of the objections.  Failure to

15  file objections within the specified time may waive the right to appeal the District Court's order.

16  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17

18

19

20

21  IT IS SO ORDERED.

22

23  ───────────────

        [1]The court is required to screen complaints brought by prisoners seeking relief against a
24  governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The
    court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally
25  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek
    monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); See
26  Barren v. Harrington, 152 F. 3d 1193 (9th Cir. 1998).

1   **Dated:**     **March 8, 2006**                 **/s/  William M. Wunderlich**

      mmkd34                              UNITED STATES MAGISTRATE JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26